UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

                                                            :

BERKLEY CUSTOM INSURANCE MANAGERS,          :

                              Plaintiff,                    :

                                                            :         18-cv-9297 (LJL)

                    -v-                                     :

                                                            :         ORDER

YORK RISK SERVICES GROUP, INC.,             :

                                                            :

                              Defendant.                    :

                                                            :

------------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/10/2020__
```

LEWIS J. LIMAN, United States District Judge:

   Defendant, York Risk Services Group, Inc. ("York") moves to compel production of

documents withheld on grounds of attorney-client privilege and attorney work product protection

by Plaintiff Berkley Custom Insurance Managers ("Berkley") and non-party Wade Clark

Mulcahy LLP ("Wade Clark").  The motion is denied.

BACKGROUND

   This matter arises out of York's third-party administration of three separate bodily injury

claims on behalf of Berkley, pursuant to a Master Claims Administration Agreement.  The three

claims (arising from injuries sustained by Fatos Rizvani, Fredy Restrepo, and Nishan Singh,

respectively) (the "Underlying Actions") arose from primary and excess commercial general

liability policies issued by Berkley to AAA Windows, who was a general contractor on a number

of construction projects for the New York City Housing Authority ("NYCHA").  AAA

Windows' contract with NYCHA required it to name NYCHA as an additional insured on the

Policies and Excess Policies.  *See* Dkt. No. 1 ("Compl.") ¶¶ 14-20.

York initially on behalf of Berkley issued disclaimers of coverage for the injuries. However, it apparently changed its position after receiving responses from NYCHA asserting that it was precluded from denying coverage based on the policy exclusion because it failed to "give written notice as soon as is reasonably possible" under New York Insurance Law § 3420(d)(2).  Berkley and its statutory insurance company Admiral Insurance Company have been providing NYCHA with a defense in connection with the Underlying Actions, which are ongoing, and may be required to indemnify NYCHA against any judgments against NYCHA or for settlements of the Underlying Actions.  Compl. ¶¶ 65-66.  Berkley claims that York is liable in breach of contract and negligence and seeks a declaratory judgment based on York's alleged failure to timely investigate the claims.  It alleges that as a result of York's alleged breach of contract and negligence, it was precluded from disclaiming coverage for the Underlying Actions. Compl. ¶¶ 70, 78.  York has interposed an answer, which denies the allegations of breach of contract and negligence and asserts as affirmative defenses that, among other things,  Section 3420 of the New York Insurance Law does not apply to the claims for the Underlying Actions because the policies at issue were not "issued or delivered" in New York (Ninth Affirmative Defense), that "[a]ny and all damages sustained were the result or [*sic*] omissions of Plaintiff or a third party over which York had no control or supervision or right of control or supervision" (Sixth Affirmative Defense), and Plaintiff "may have failed to name a necessary and indispensable party including, but not limited to, the Wade Clark Mulcahy law firm" (Fourth Affirmative Defense).  *See* Dkt. No. 6 at 11-12.

2

On or about June 11, 2019, York served Berkley with Requests for Production of Documents.  Requests numbers 8 through 10 of York's Requests for Production of Documents sought the following documents/communications:

> 8.      All communications and documents exchanged by and between Berkley and Wade Clark Mulcahy in connection with the Underlying Actions.
>
> 9.      All communications and documents exchanged by and between Berkley and Wade Clark Mulcahy relating or pertaining to Berkley's obligations, if any, to defend and potentially indemnify NYCHA in the Underlying Actions.
>
> 10.     All documents reflecting all legal advice Berkley received relating or pertaining to the disclaimers issued by York in response to NYCHA's demand that Berkley defend NYCHA in the Underling Actions.

On May 29, 2020, York served two non-party subpoenas on Wade Clark.  Broadly speaking, the subpoenas seek testimony and the complete copies of the legal files for each of the Underlying Actions, correspondence between Wade Clark and Berkley regarding Berkley's obligations to defend or indemnify in connection with the Underlying Actions, coverage opinions, invoices and billing statements, and correspondence with third parties.  Dkt. No. 40, Ex. J.

In response to the requests, Berkley and Wade Clark produced documents and communications on which York was copied at the time.  However, Berkley has withheld (1) documents on which York was not copied; and (2) draft letters to third parties.  The instant motion to compel, at Dkt. No. 40, followed.

## DISCUSSION

"The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal

advice in the course of a professional relationship." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 623 (2016).  "The party asserting the privilege bears the burden of establishing its entitlement to protection by showing that the communication at issue was between an attorney and a client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship,' that the communication was predominantly of a legal character, that the communication was confidential and that the privilege was not waived."  *Id.* at 624 (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593-94 (1989)).

1.  Implied Waiver by Putting Advice at Issue

York argues first that Berkley has waived the attorney-client privilege by placing the privileged communications at issue.  With respect to each of the three Underlying Actions, York initially issued letters to NYCHA on Berkley's behalf disclaiming coverage under the Policies pursuant to an Action Over Exclusion.  NYCHA responded that the disclaimers were untimely. York argues that "Berkley subsequently made decisions to change its coverage positions based upon (likely erroneous) legal advice it received from Wade Clark" and that "[b]y bringing this action, Berkley is attempting to inappropriately place blame on York for its change in position." Further, it argues that "Berkley has put the advice of Wade Clark at issue . . . by using it to support its claim that it was forced to change coverage positions as a result of York's alleged conduct."  Dkt. No. 40 at 2.

The attorney-client privilege "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  The principle is based on the notion that "the attorney-

client privilege cannot at once be used as a shield and a sword." *Id.* at 1292.  If a party puts

privileged communications "at issue," it cannot complain when the other side asks to see and

cross-examine on those and reasonably related communications. *See Orco Bank, N.V. v.

Proteinas Del Pacifico, S.A.*, 577 N.Y.S.2d 841 (N.Y. App. Div. 1992) (finding waiver of

privilege where plaintiff placed the subject matter of counsel's advice in issue and made

selective disclosure of such advice and there was a need for defendant to have access to

privileged materials to contest plaintiff's claims that its attorneys advised it at all times with

respect to [the matter at issue in the litigation]").  For there to be an "at issue" waiver, the party

asserting the privilege must "rely on privileged advice from his counsel to make his claim or

defense." *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).

Berkley has not put privileged communications at issue or effected an implied waiver of

the privilege.  It has not asserted the advice of counsel in its complaint and does not intend to

rely on the advice of counsel or privileged communications to make out its claim.  It stipulates

that it will not rely on advice of counsel, including that of Wade Clark, to "to advance legal

arguments in this action concerning the applicability of New York Insurance Law § 3420," but

will advance its claims only through arguments made by "undersigned counsel" and not based on

evidence from Wade Clark or about Wade Clark's advice.   Dkt. No. 41 at 2-3.  There is thus no

unfairness in requiring York to rebut Berkley's arguments through its own experts and own

witnesses, rather than through Wade Clark's historical advice.

The Appellate Division's decision in *Deutsche Bank Trust Co. of America v. Tri-Link Inv.

Trust*, 837 N.Y.S.2d 15 (N.Y. App. Div. 2007), is on point.  There, plaintiff sought

indemnification for the reasonable fees and costs it incurred in defending and settling a claim in

litigation.  Defendant sought plaintiff's communications with its litigation counsel to test the

reasonableness of the fees and the settlement arguing that they had been put at issue by the claim.

The Appellate Division rejected defendant's argument.  It held, "that a privileged communication

contains information relevant to issues the parties are litigating does not, without more, place the

contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a

privilege would have little effect."  *Id.* at 23.  Rather, "'[a]t issue' waiver of privilege occurs

where a party affirmatively places the subject matter of its own privileged communication at

issue in litigation, so that invasion of the privilege is required to determine the validity of a claim

or defense of the party asserting the privilege, and application of the privilege would deprive the

adversary of vital information."  *Id.*  Because plaintiff had not premised its claims on the legal

advice it received and had stated that "it will not use privileged material or attorney work product

to establish" its claim, and because the claim turned on an objective standard, the court held that

the commencement of the indemnity action did not effect an at issue waiver.  *Id.* at 23-24.  *See

also Windsor Securities, LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 519 (S.D.N.Y. 2017)

(holding that "[b]ecause [plaintiff] does not intend to use any of its communications with []

counsel as evidence in this case—and in any event will now be precluded from doing so—there

is no obvious unfairness to defendants in upholding [plaintiff's] claim of privilege" and that

plaintiff had not put legal advice at issue so that invasion of the privilege was required to

determine the validity of a claim or defense); *Miteva v. Third Point Management Co., L.L.C.*,

218 F.R.D. 397, 398 (S.D.N.Y. 2003)

Those principles are squarely applicable here.  The information in Wade Clark's

possession and in the private communications between Wade Clark and York may be relevant to

the issues regarding the New York Insurance Law that the parties here will be litigating, but

York has not put that advice at issue.  The standard York will have to satisfy is an objective one.

It does not matter whether York changed its position based on Wade Clark's advice or whether

Wade Clark properly advised Berkley or not regarding the applicability of New York Insurance

Law § 3420.  The point is that NYCHA asserted that Berkley's disclaimer was untimely and

Berkley acceded to that position.  If Berkley was wrong and the alleged delay in investigating the

claim was not the cause of any loss to Berkley because it would have been entitled to disclaim

coverage notwithstanding the alleged delay, then the advice of counsel will not assist Berkley.

Berkley will not be entitled to recover against York, notwithstanding any advice it received.  Its

claim will fail.  What is relevant is whether York breached its agreement or its alleged duty of

care and whether those breaches caused Berkley to incur defense costs or indemnification

obligations it otherwise would have been able to avoid—not what the advice of counsel was.

## 2.  Waiver by Disclosure of Privileged Information

York argues second that Berkley waived the privilege by selectively disclosing privileged

communications on the same subject to York.  It submits that prior to this lawsuit, Berkley

disclosed to York the legal advice it received from Wade Clark and authorized York to directly

communicate with Wade Clark to receive legal advice about the Underlying Actions.  York

contends that by making these disclosures, Berkley waived the privilege with respect to all

communications between Wade Clark and Berkley about the Underlying Actions.  In support,

York attaches extensive documentation, in which Wade Clark discloses to York the legal advice

it has provided to Berkley regarding Berkley's coverage obligations with respect to the

Underlying Actions, including opinion letters, emails, and invoices.  *See* Dkt. No. 40, Exs 1-7.

In order to enjoy the protection of the privilege, a communication must be made and kept in confidence. *Ambac Assur. Corp.*, 27 N.Y.3d at 623. "It is well established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege." *Schanfield v. Sojitz Corp. of America*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009); *Music Sales Corp. v. Morris*, 1999 WL 974025 (S.D.N.Y. Oct. 26, 1999). Moreover, the "fairness doctrine" dictates that disclosure of one portion of a privileged communication in the course of litigation constitutes an "implied waiver" of privilege over the entire communication. *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1997) ("[T]estimony as to part of a privileged communication, in fairness, requires production of the remainder.") (citing *McCormick On Evidence* § 93, at 194-95 (2d ed. 1972)). Similarly, disclosing "one privileged conversation on a topic" in the course of litigation may constitute a "subject matter waiver," which "allows the attacking party to reach all privileged conversations regarding [that topic]." *Id.*

However, the fairness doctrine does not apply—and a party makes neither an implied waiver nor a subject matter waiver of privilege—when a party discloses certain privileged information *outside* the context of litigation. *See In re von Bulow*, 828 F.2d at 102. Rather, extrajudicial disclosures "constitute a waiver of the privilege 'for the *communications or portions of communications* disclosed.'" *United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997) (quoting *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469 (S.D.N.Y. 1996)); *see id.* at 90 ("The *von Bulow* court . . . did recognize that the attorney-client privilege had been waived with respect to any 'matters *actually disclosed* in the book,' even though the disclosures were extrajudicial.") (quoting *von Bulow* 828 F.2d at 102)). The *Jacobs* opinion explicated that although an extrajudicial disclosure does not waive privilege over an entire communication or

subject matter, neither is such a disclosure necessarily limited to the precise text that was shared.

Thus, for example, "[a]n inaccurate statement of a privileged communication waives the

privilege with respect to that communication," and a party may not extrajudicially share an

excerpt of a quote but claim privilege over the portion of the quote that conveys the full and

accurate meaning of its originator. *Id*. at 90.  Similarly, the paraphrasing of specific statements

waives privilege over the statements themselves. *See id.* at 91 (citing *In re Kidder Peabody*, 168

F.R.D. at 469).

       Given this authority, York's motion reaches too far.  Although the waiver is not

necessarily limited to the precise text shared by Berkley or Wade Clark to York, York has not

waived privilege as to the subject matters of the Underlying Actions.  York is not seeking to

compel production of full quotes by Wade Clark that were selectively disclosed, as in *Jacobs*, or

of the text of specific statements by Wade Clark that were paraphrased by Berkley, as in *In re*

*Kidder Peabody*.  Rather, it seeks all "communications and documents related to the very same

subject matter of the legal advice [Berkley] previously disclosed."  Dkt. No. 40 at 1.  Berkley has

made no waiver of privilege over such communication.  Accordingly, York's motion is denied

without prejudice.[1]

   3. <u>Drafts of communications intended for public dissemination</u>

       Finally, as to a select subset of documents, York argues that draft communications to

third parties intended for publication are not within the privilege.  *See* Dkt No. 40 at 5.

       In this Circuit, however, the fact that "documents appear to be drafts of communications

the final version of which might eventually be sent to other persons, and as distributed would not

---

[1] York may take the deposition of Wade Clark limited to the communications disclosed to York.

9

be privileged," provides "no basis . . . for inferring that [the privilege holder] did not intend that the drafts—which reflect its confidential requests for legal advice and were not distributed—to be confidential." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15,* 731 F.2d 1032, 1038 (2d Cir. 1984); *see In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp.3d 521, 528 (S.D.N.Y. 2015) (same); *Favors v Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2008) ("[I]n this Circuit, the publication of a non-confidential attorney-client communication does not create an inference that related communications or earlier drafts were similarly not intended to be confidential.") (citing *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d at 1037).

It is undisputed that each of the draft letters is attached to an email in which Berkley requests that Wade Clark provide legal advice concerning claims and positions advanced in the underlying litigation.  In response, Wade Clark prepared draft letters discussing Berkley's legal position.  The circumstances reflect that the documents were not intended for publication. Accordingly, the motion to compel with respect to those documents on the grounds that they are drafts is denied.

<u>CONCLUSION</u>

For the foregoing reasons, York's motion to compel is DENIED; Berkley's cross-motion to quash the subpoena issued by York to Wade Clark is GRANTED, except to the extent that York seeks testimony regarding documents and communications already disclosed to it.  The Clerk of Court is respectfully directed to close Dkt. Nos. 40 and 41.

SO ORDERED.

Dated: September 10, 2020
      New York, New York

LEWIS J. LIMAN
United States District Judge