USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/22/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
      :
BERKLEY CUSTOM INSURANCE MANAGERS,  :
      :
      Plaintiff,      :
      :    18-cv-09297 (LJL)
    -v-       :
      :    OPININO & ORDER
NEW YORK RISK SERVICES GROUP,    :
      :
      Defendant.     :
      :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Berkley Custom Insurance Managers ("Berkley") moves to disqualify the law firm of Furman Kornfeld & Brennan LLP ("Furman Kornfeld") from further representation of defendant York Risk Services Group, Inc. ("York") in this matter. Dkt. No. 46. The motion is denied.

## BACKGROUND

The allegations of the complaint have been described in this Court's previous orders. *See* Dkt. No. 49. In brief, Berkley alleges that York breached its Master Claims Administration Agreement with Berkley and was negligent in connection with its administration of bodily injury claims based on injuries suffered by three construction workers injured in the summer of 2015 on construction projects for the New York City Housing Authority ("NYCHA"). The three claims (arising from injuries sustained by Fatos Rizvani, Fredy Restrepo, and Nishan Singh) (the "Underlying Actions") arose from primary and excess commercial general liability policies ("Insurance Policies") issued by Berkley to AAA Windows, who was a general contractor on the construction projects for NYCHA. AAA Windows' contract with NYCHA required it to name

NYCHA as an additional insured on the Insurance Policies. *See* Dkt. No. 1 ("Compl.") ¶¶ 14-20. In October 2015, counsel for NYCHA wrote to Berkley's statutory insurance company, Admiral Insurance Company ("Admiral"), and requested that Admiral assume the defense and indemnification of NYCHA in connection with the claimed injuries. The claim was assigned to York for administration. Compl. ¶¶ 24-25, 28-29, 32-33.

York, on behalf of Berkley, initially issued disclaimers of coverage for the injuries pursuant to a New York Action Over Exclusion Endorsement ("Exclusion Endorsement") in the insurance policy, but apparently changed its position after receiving responses from NYCHA asserting that it was precluded from denying coverage based on the relevant policy exclusion because it failed to "give written notice as soon as is reasonably possible" as required under New York Insurance Law § 3420(d)(2). Berkley and Admiral have been providing NYCHA with a defense in connection with the Underlying Actions, which are ongoing, and may be required to indemnify NYCHA against any settlements or judgments against it in those actions. Compl. ¶¶ 65-66. Berkley claims that York is liable in breach of contract and negligence and seeks a declaratory judgment based on York's alleged failure to timely investigate the claims. It alleges that as a result of York's alleged breach of contract and negligence, it was precluded from disclaiming coverage for the Underlying Actions. Compl. ¶¶ 70, 78.

This action was brought in October 2018. York hired the law firm Furman Kornfeld & Brennan LLP ("Furman Kornfeld") to represent it. In July 2020, Furman Kornfeld hired Michael Gauvin, Esq. ("Gauvin") as a partner. From June 2013 to March 2020, Gauvin was an attorney at the law firm Wade Clark Mulcahy LLC ("Wade Clark"), which represents Berkley in the instant dispute and the Underlying Actions. Wade Clark billed 252.3 hours for services rendered in connection with the Underlying Actions; while Gauvin was employed at Wade

Clark, he billed 35.1 of those hours.  Dkt. No. 54-1.

Immediately after hiring Gauvin, Furman Kornfeld implemented an ethical screen walling off and excluding Gauvin from participating in, communicating or accessing information or documents related to the instant lawsuit or the three underlying personal injury cases.  Dkt. No. 54-1 ("Kowlowitz Decl.") ¶ 10; Dkt. No. 54-5 ("Furman Decl.") ¶ 7.  Gauvin was advised at the outset of his employment at Furman Kornfeld that Furman Kornfeld attorneys would not consult with him regarding his representation of Berkley or the underlying personal injury lawsuits.  Dkt. No. 54-6 ("Gauvin Decl.") ¶ 6; Furman Decl. ¶ 8.  Gauvin brought no documents relating to his prior involvement in Wade Clark's representation of Berkley, confidential or otherwise.  Gauvin Decl. ¶ 8.  He declares that he has never been asked about or shared any information, confidential or otherwise, regarding Wade Clark's representation of Berkley with any Furman Kornfeld lawyers.  Gauvin Decl. ¶¶ 9-13.

## LEGAL STANDARDS

The federal courts have the authority, under certain circumstances, to disqualify counsel admitted to the bar of the Court from appearing on behalf of a client.  *See Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005); *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).  That authority is derived from and circumscribed by the inherent power of the courts to "preserve the integrity of the adversary process."  *Hempstead Video*, 409 F.3d at 132 (quoting *Nyquist*, 590 F.2d at 1246).  The rules of the American Bar Association (ABA) and state disciplinary authorities provide helpful guidance in the exercise of the federal court's authority but are not the source of the authority. *Id.*

The Court's authority is carefully and sensitively exercised.  The Court "balance[s] a client's right freely to choose his counsel against the need to maintain the highest standards of

the profession." *Hempstead Video*, 409 F.3d at 132 (quotation omitted). "Given that, as a rule, parties should have the right to counsel of their choice, and that disqualification in the midst of litigation can have a profoundly disruptive impact, a party's burden in seeking to disqualify opposing counsel is high, and the court tasked with resolving such a motion must proceed with care." *Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, 2016 WL 3453342 at *10 (S.D.N.Y. June 15, 2016). The risk that a motion to disqualify is misused as a tactical device requires that such motions be subject to particularly strict scrutiny. *See, e.g.*, *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). At the same time, the Second Circuit has stated that "in the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). A motion to disqualify counsel is committed to the sound discretion of the district court. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).

Berkley grounds its motion for disqualification here on the rules against successive representation. Those rules, as reflected in the New York Rules of Professional Conduct, state in relevant part that:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) Unless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
      (1) Whose interests are materially adverse to that person; and
      (2) About whom the lawyer had acquired information [that is confidential and material] to the matter.

New York Rules of Professional Conduct 1.9(a)-(b).

Moreover, under Rule 1.10(a), the conflict, under Rule 1.9, of a lawyer associated with a

firm is imputed to the firm unless either the conflict is waived or the "newly associated lawyer did not acquire any information protected by Rule 1.6 or Rule 1.9(c) that is material to the current matter." *Id*. 1.10.

The Second Circuit has held that in cases of successive representation, . . . an attorney may be disqualified if (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit, and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video,* 409 F.3d at 133. If those conditions are satisfied, "a rebuttable presumption arises that the attorney and the firm share client confidences, and the court then proceeds to the second step, which involves determining whether that presumption has been rebutted." *Id.* at 134. In particular, "the presumption of confidence within a firm [can] be rebutted," *id.* at 133, and there are "no categorical rules against considering practices and structures that protect client confidences within a firm in determining whether an attorney or firm should be disqualified. Courts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." *Id.* at 137.

## DISCUSSION

Berkley argues that Attorney Gauvin has a conflict of interest that is imputed to Furman Kornfeld because while he was at Wade Clark that firm provided insurance coverage advice and representation to Berkley in connection with Berkley's obligations to NYCHA and the underlying personal injury actions. It notes, in particular, that at an earlier stage of this litigation, York sought (unsuccessfully) to compel production of the correspondence Berkley (and York)

had with Wade Clark. It contends that York's motion to compel establishes both that the representations were substantially related and that Berkley will suffer prejudice if Wade Clark (with Gauvin a member of the firm) is permitted to continue in this action. Finally, Berkley contends that Wade Clark has not rebutted the presumption because (1) it cannot be rebutted where the attorney is "switching sides," and (2) York's affidavits with respect to its protective measures are insufficiently detailed to provide comfort to it and to the Court.

This case does not present the paradigmatic circumstance where counsel engaged to represent a client in a dispute and entrusted with that client's secrets suddenly jumps ship and joins the adversary's team. Gauvin and Wade Clark did not represent Berkley in the dispute with York, and the secrets with which he was entrusted largely were shared with York in connection with the representation both Wade Clark and York commonly presented Berkley with respect to the Underlying Actions. The contemporaneous time records for Gauvin, shared by Wade Clark and Berkley with York, reveal that Gauvin billed time to Berkley on selected occasions from August 2016 to January 2019. Most of the hours were billed on or before August 2018—that is, before Berkley sued York. Certain of the time entries reflect conversations or communications Gauvin had with York—by definition, they do not represent secrets from York. *See, e.g.* Dkt No. 54-2 at 6 ("Communicate (with client) telephone conference with M. Walker regarding contract between LIRO and NYCHA"); *id.* at 8 ("Address notice argument in coverage analysis to M Walker"); *id.* at 16 ("review/analyze correspondence from M. Walker regarding plaintiff's Bill of Particulars"); *id.* ("Review/analyze correspondence from M Walker regarding disclaimer"). Other time entries correspond with records previously presented to the Court as documents Berkley and Wade Clark voluntarily shared with York. *Compare e.g.* Dkt. No. 54-2 at 4, 7, 11 (time entries for coverage position letter, supplemental coverage position letter,

reservation of rights), *with* Dkt No. 40-2 (sending coverage position letter, supplemental coverage position letter, and reservation of rights to York). Indeed, in its motion, Berkley does not identify any communications it had with Gauvin or confidential information Gauvin was privy to that was not already shared with York. *See* Dkt. No. 47 at 2 (averring that Gauvin "became familiar with Berkley's policy forms and claim handling practices and procedures").

Nevertheless, as noted above, disqualitification is not only required where an attorney seeks to represent both parties successively in the same lawsuit, but also where the attorney for one party previously represented the other party in a matter that is substantially related to the action in which the disqualification dispute arises. *See Hempstead Video*, 409 F.3d at 133. "[A] substantial relationship between the subject matter of counsel's prior representation and the present lawsuit exists if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same." *Anderson v. City of New York*, 2017 WL 4382163, at *3 (S.D.N.Y. Sept. 29, 2017) (quotation omitted). To meet this standard, "the relationship between issues in the prior and present cases [must be] 'presently clear.' Put more specifically, disqualification has been granted when the issues involved have been 'identical' or 'essentially the same.'" *Revise Clothing v. Joe's Jeans Subsid. Inc.*, 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978)). "This inquiry does not turn on whether the legal claims or underlying theories are similar, but rather whether the successive representations share common material factual issues." *Anderson*, 2017 WL 4382163, at *3 (quotation omitted); *see also Revise Clothing*, 687 F. Supp. 2d at 392 ("It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes.") (emphasis and quotation omitted).

The Court is persuaded that the instant dispute is substantially related to the subject matter of Wade Clark's representation of Berkley and York with respect to the Underlying Actions. Berkley here claims that it had an entitlement to an exclusion from coverage under the Exclusion Endorsement but lost that entitlement and is required to provide coverage because of York's alleged delay and negligence in handling the claim. Wade Clark advised both York and Berkley about Berkley's coverage obligations under the Insurance Policies and was involved in the correspondence with NYCHA. The two representations share common material factual issues even if those material issues, including the positions taken by Berkley and those taken by NYCHA, are not disputed. For that reason, it was appropriate for Furman Kornfeld to wall off Gauvin. Gauvin has a conflict of interest under the New York Rules of Professional Conduct even if all of the privileged information to which he was privy was shared with York.

That the actions are substantially related and that Gauvin has a conflict, however, is not sufficient to justify disqualification of Furman Kornfeld. The basis for the rule imputing an attorney's conflict to his firm is the concern that the attorney will share with the firm privileged or confidential information which the firm (and the client) did not otherwise know or lawfully possess. The American Law Institute's Restatement (Third) of the Law Governing Lawyers explains that "absent the rule, . . . the lawyer might use confidential information of the former client contrary to that client's interest and in violation of [ethical rules]" and that "[t]he lawyer's obligation to the former client might constrain the lawyer in representing the present client effectively, for example, by limiting the questions the lawyer could ask the former client in testimony." Restatement (Third) of the Law Governing Lawyers § 132, comment (b) (2000). If there is little or no risk that confidential information would be disclosed to the new client as a result of the change of firm, then there is little or no basis for disqualifying the firm.


Here, Berkley has failed to show that Gauvin, as a result of his representation of Berkley, was in possession of any confidential information not already shared and freely available to York. Wade Clark has not represented Berkley in this action and there is no evidence that it has provided advice with respect to Berkley's rights as against York. The only evidence is that it provided coverage counsel advice on a matter as to which Berkley and York had a common interest. Indeed, the best Berkley is able to offer is the averment that while Wade Clark "represented Berkley in communications with policyholders and claimants and their counsel in connection with coverage . . . Wade Clark and Attorney Gauvin became familiar with Berkley's policy forms and claim handling practices and procedures." Dkt. No. 47 at 2. It does not claim that there was any other privileged information; Gauvin knew what had been conveyed to NYCHA and York. And, as to the policy forms and claim handling practice and procedures, York would have been knowledgeable about those from its role as claims administrator. Berkley does not claim otherwise. *See Hempstead Video*, 409 F.3d at 133 (presumption of firm disqualification only arises when attorney had access to "relevant privileged information"). Moreover, the Court has ruled that the advice of Wade Clark—even if there was advice to which York did not have access—is not relevant to Berkley's claim. *See* Dkt. No. 49 at 7 ("What is relevant is whether York breached its agreement or its alleged duty of care and whether those breaches caused Berkley to incur defense costs or indemnification obligations it otherwise would have been able to avoid—not what the advice of counsel was."). York has not disputed that ruling and, indeed, embraces it in its opposition to the motion for disqualification. *See* Dkt. No. 54 at 7.

Even if Gauvin had access to privileged information to which York did not have access and a presumption applies, York has rebutted it. *See Hempstead Video*, 409 F.3d at 133 ("[T]he

9

presumption of confidence within a firm [can] be rebutted."). Upon Gauvin's arrival at Furman Kornfield, an ethical screen was immediately implemented blocking his participation in the instant action; he was told by the firm that he would not be consulted about it; and he has declared that he did not bring any documents related to the Underlying Actions to Furman Kornfield, and has not been asked about or shared any information about the Underlying Actions with Furman Kornfeld. Kowlowitz Decl. ¶ 10; Furman Decl. ¶ 7; Gauvin Decl ¶¶ 6, 8-13; *see Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 346 (S.D.N.Y. 2011) ("One method of rebutting the presumption is by demonstrating a timely and effective ethical screen that fences the disqualified attorney from the other attorneys in the firm in connection with the case for which the conflict is alleged.") (citations omitted); *Cole Mech. Corp.*, 2007 WL 2593000 at *7 n.4 (noting that where one attorney is walled off from the rest of the firm, "disqualification of the individual attorney may not necessarily require disqualification of the firm"); *see, e.g. Reilly v. Comput. Assocs. Long–Term Disability Plan*, 423 F. Supp. 2d 5, 12 (E.D.N.Y.2006); *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 275 (S.D.N.Y.2004).

      Neither of Berkley's responses is sufficient. First, contrary to Berkley's assertion, there is "no categorical rule against considering practices and structures that protect client confidences within a firm in determining whether an attorney or firm should be disqualified." *Hempstead Video*, 409 F.3d at 137. Indeed, "[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." *id.* at 137. In this case, the precautions taken are sufficient to rebut any presumption of disqualification. This conclusion is particularly sound in light of (1) the absence of evidence that Gauvin was exposed to relevant confidential information in the first place, and (2) the nature of

the related actions as not presenting a conventional case of conflict of interest because Berkley and York were not adversaries in the Underlying Actions, and indeed shared a common interest.

The principal case upon which Berkley relies is the New York Court of Appeals' decision in *Kassis v. Teacher's Ins. & Annuity Ass'n.*, 93 N.Y.2d 611 (1999). There, the New York Court of Appeals held that the erection of a Chinese Wall was insufficient and disqualification was required where counsel for one party to a litigation switched sides and joined the firm of counsel for the other party. The Court paid careful attention to the following facts: (1) the disqualified attorney "actively represented the opposing party on the same matter in litigation," 93 N.Y.2d at 615, and "played an appreciable role as counsel for the plaintiff" in the litigation where he later joined counsel for defendant, *id.* at 618; (2) the disqualified attorney formerly worked in a small law firm characterized by informality and constant cross-pollination, *id.* at 617-18, and (3) the law firm sought to be disqualified made only "conclusory averments" that the lawyer in question did not acquire material confidences. *Id.* at 619.

The *Kassis* court was careful, however, not to adopt the *per se* rule that Berkley argues for here. It specifically stated that "[t]o determine whether the presumption of shared confidences and disqualification has been rebutted, consideration must be given to the particular facts of each case." *Id*. at 617. It reaffirmed its rulings in earlier cases that no disqualification was required where the disqualified counsel had had only "negligible" involvement in the representation at issue or the confidences counsel acquired were negligible. *Id*. (citing *Solow*, 83 N.Y.2d at 306). Indeed, it highlighted that "imputed disqualification is not an irrebuttable presumption" and that a rule of per se disqualification would be "unnecessarily preclusive because it disqualifies all members of a law firm indiscriminately whether or not they share knowledge of former client's confidences and secrets." *Id*. at 616 (quotation omitted). Such a

11

rule would "impose significant hardships on the current client," is "subject to abusive invocation purely to seek tactical advantages in a lawsuit[,] . . . conflicts with public policies favoring client choice[,] and restricts an attorney's ability to practice." *Id*. at 616-617 (quotations omitted); *see Hempstead Video*, 409 F.3d at 133 (citing *Kassis* as an example of the "strong trend, which [the Second Circuit joins], toward allowing the presumption of confidence sharing within a firm to be rebutted") (internal quotation omitted); *see, e.g. Arista Records LLC v. Lime Grp. LLC*, 2011 WL 672254, at *7 (S.D.N.Y. Feb. 22, 2011) (holding that there is no per se rule that the conflicted attorney's appreciable role on the other side of a contested litigation mandates disqualification of the successor law firm without regard to a screen); *Intelli-Check*, 2008 WL 4682433, at *4 (same); *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270, 278 (S.D.N.Y. 2004) (same) (collecting cases).

Second, Berkley erroneously argues that the affidavits submitted by York are conclusory and inadequate to establish that the ethical screen was effective. Gauvin declares that at the outset of his employment at Furman Kornfield he was informed that he would not be consulted about his involvement in Wade Clark's representation of Berkley, and that an ethical screen was implemented before his employment began preventing his accessing any information regarding the instant lawsuit or the Underlying Actions. Gauvin Decl. ¶¶ 6-8. He further declared that he has brought no documents or information regarding Berkley to Furman Kornfield, and that he has never been asked by any attorney at Furman Kornfield to provide assistance or advice relating to the defense of York. *Id*. ¶¶ 9-12. Gauvin's detailed declaration is corroborated not by one declaration but by declarations from each of the Furman Kornfield attorneys representing York in this matter, *see* Kowlowitz Decl.; Dkt. No. 54-7 ("Sckolnick Decl."); Dkt. No. 54-8 ("Panny Decl."), as well as from the managing partner of Furman Kornfield, *see* Furman Decl.

Berkley cites no case supporting the proposition that affidavits attesting to an ethical screen and to the absence of information sharing are inadequate to rebut a presumption of disqualification. Rather, it attempts to distinguish the cases on which York relies by arguing that those cases involved more detailed and robust evidence that the screen was effective, and that the risk of exposure by the attorney in question to relevant confidential information was lesser. *See* Reply Br., Dkt. No. 57 at 7-9 (citing *Arista Records LLC*, 2011 WL 672254; *Papyrus Tech. Corp.*, 325 F. Supp. 2d 270; and *Hempstead Video*, 409 F.3d at 136). A comparison of those cases to this one does not support Berkley's position—and not only because each of them denied a motion to disqualify. Significantly, each involved motions to disqualify where the parties subject to successive representation were at all relevant times adversarial. *See Arista Records,* 2011 WL 672254, at *3; *Hempstead Video*, 409 F.3d at 130; *Papyrus*, 325 F. Supp. 2d at 273-75. In *Arista Records*, it was "undisputed that [the attorney in question] gained access to confidential information relating to [the matter in question]," 2011 WL 672254, at *3, and in *Papyrus Tech. Corp.*, there was evidence that the attorney in question had received specific confidences or secrets in the form of emails concerning the matter at issue (although he denied recalling their contents). 325 F. Supp. 2d at 274.

Here, in contrast, and as described above, Berkley and York shared a common interest in the underlying actions, and Wade Clark did not advise Berkley on any matter adverse to York. *See Kassis*, 93 N.Y.2d at 618 (the operative questions include whether "significant client confidences were acquired by the disqualified attorney"). Of course, Gauvin was privy to confidential and privileged information belonging to Berkley that was shared with York. But Berkley's protection against the improper use or disclosure of that information lies with the Court and the rules of evidence. It does not require disqualification of Furman Kornfeld for

being privy to the same information shared voluntarily by Berkley and its counsel with Furman Kornfeld's client, York.

The admonition by the Second Circuit that "[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint," *Hampstead Video*, 409 F.3d at 137, is clear that *both* the risk of taint *and* the structures in place are relevant to the application of the standard. There has been only a very thin demonstration of any risk of taint, and the attestations of York demonstrate practices and structures in place that nullify that small risk. The motion to disqualify is therefore denied.

SO ORDERED.

Dated: October 22, 2020
      New York, New York

                                                 LEWIS J. LIMAN
                                                 United States District Judge